BLACK, ASSISTANT REGIONAL COMMISSIONER,
ALCOHOL AND TOBACCO TAX DIVISION,
INTERNAL REVENUE SERVICE, *v.*
MAGNOLIA LIQUOR CO., INC.

No. 14. Argued October 17, 1957.—Decided November 12, 1957.

*Daniel M. Friedman* argued the cause for petitioner. With him on the brief were *Solicitor General Rankin* and *Assistant Attorney General Hansen.*

*Moise S. Steeg, Jr.* argued the cause and filed a brief for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner seeks to suspend respondent's wholesale liquor permit issued under the Federal Alcohol Administration Act (49 Stat. 977, 27 U. S. C. § 201) for having made "quota" sales of alcoholic beverages in violation of § 5 (a) and (b) of the Act. The agency ordered suspension of the permit for 15 days for that violation. The Court of Appeals set the order aside, 231 F. 2d 941. The case is here on a petition for a writ of certiorari, which we granted (352 U. S. 877) because of a conflict between the decision below and *Distilled Brands* v. *Dunigan,* 222 F. 2d 867, from the Second Circuit.

Section 5 makes it unlawful for a wholesaler to induce a retailer to purchase distilled spirits "to the exclusion in whole or in part of distilled spirits" offered by other persons "by requiring the retailer to take and dispose of a certain quota of any of such products," where, *inter alia,* the effect is "substantially to restrain or prevent transactions in interstate or foreign commerce in any such products."

The facts are that during the period in question Johnny Walker Scotch and Seagram's V. O. Whiskey were in short supply, while Seagram's Ancient Bottle Gin and Seagram's 7-Crown Whiskey were plentiful, Ancient Bottle being a poor seller. Respondent, in order to increase its sales of Ancient Bottle Gin and 7-Crown Whiskey, compelled retailers to buy them, which they did not desire, in order to obtain the other two whiskeys which they did desire. The agency found that respondent's sales were "quota" sales within the meaning of the Act, that they affected adversely the sales of competing brands, and "excluded, in whole or in part, distilled spirits . . . offered for sale by other persons in interstate commerce"—all to the end of substantially restraining and preventing commerce. The Court of Appeals concluded that the transactions complained of, although tie-in sales, did not violate § 5 of the Act.

Tying agreements by which the sale of one commodity is conditioned on the purchase of another have been repeatedly condemned under the antitrust laws, since they serve no purpose beyond the suppression of competition. *Standard Oil Co.* v. *United States,* 337 U. S. 293, 305–306; *United States* v. *Paramount Pictures,* 334 U. S. 131, 156–159; *International Salt Co.* v. *United States,* 332 U. S. 392; *Mercoid Corp.* v. *Minneapolis-Honeywell Co.,* 320 U. S. 680. One aim of Congress by the present legislation was to prohibit practices that were "analogous to those prohibited by the antitrust laws," (see H. R. Rep.

No. 1542, 74th Cong., 1st Sess., p. 12). The tie-in sales involved here seem to us to run afoul of that policy, since the retailer is coerced into buying distilled spirits he would otherwise not have purchased at that time, and other sellers of the products are to that extent excluded from the market that would exist when the demand arose. A wholesaler who compels a retailer to buy an unwanted inventory as a condition to acquisition of needed articles exacts a "quota" from the retailer and excludes sales by competing wholesalers in the statutory sense.

The court below relied on two countervailing considerations. It noted that § 5 (a) is headed "Exclusive outlet" and § 5 (b) "Tied house." These titles were enough, it thought, to raise doubts concerning the meaning of the statutory clauses, since the retailer in question was not a "tied house" or "exclusive outlet," but only the victim of these particular tied-in sales. The court was constrained to read the Act narrowly, as it conceived it to be penal in nature when it forfeited a permit to do business. But we deal here with remedial legislation whose language should be given hospitable scope. See *Securities and Exchange Commission* v. *Joiner Corp.,* 320 U. S. 344, 353, 355. The will of Congress would be thwarted if we gave the language in question the strictest construction possible. The fair meaning of the Act is our guide; and it seems too clear for extended argument that the tied-in sale, though it falls short of creating an exclusive outlet and a permanently "tied house," violates the Act.

The other consideration relied upon by the Court of Appeals was a letter written by the agency to Congress in 1947 asking for an amendment to § 5 because it had doubt "whether violations of the statute could be established through the 'tie-in' sales." The administrative practice, we are advised, has quite consistently reflected the view that such sales are banned by the Act. See Annual Report, Commissioner of Internal Revenue 1946,

pp. 45–46; *id.*, 1947, p. 49. The fact that the agency sought a clarifying amendment is, therefore, of no significance. See *Wong Yang Sung* v. *McGrath,* 339 U. S. 33, 47; *United States* v. *Turley,* 352 U. S. 407, 415, n. 14. The judgment is reversed and the case is remanded to the Court of Appeals for proceedings in conformity with this opinion.

*Reversed.*