BOWL–MOR COMPANY, INC., a Delaware
corporation, Plaintiff,

v.

BRUNSWICK CORPORATION, a Delaware
corporation, Defendant.

Court of Chancery of Delaware,
New Castle.

Jan. 24, 1972.

**62**

Paul P. Welsh, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Jack R. Pirozzolo, of Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., for plaintiff.

John P. Sinclair, of Potter Anderson & Corroon, Wilmington, for defendant.

DUFFY, Chancellor:

Bowl-Mor Company, Inc., brought this action against Brunswick Corporation for injunctive relief and damages for tortious interference with present and prospective relationships with its customers. Injunctive relief was granted and the case proceeded on the damage claim but became inactive for some three years following Bowl-Mor's bankruptcy; trustees in bankruptcy now prosecute it for plaintiff.

### A.

Bowl-Mor was organized in 1954 to manufacture automatic duckpin machines for use in bowing alleys throughout the United States. It began to produce tenpin ("large ball") bowling machines in 1961. Because of the relatively large investment required to establish a bowling center, automatic bowling machinery is rarely purchased outright; installation of the equipment is usually financed by lease, conditional sale, chattel mortgage or other "installment" plan. Bowl-Mor usually provided financing to a customer through a lease which was then sold, with recourse, to C. I.T. Leasing Corporation (CIT) or to General Electric Credit Corporation (GECC).

During 1962 and 1964 the bowling equipment business was highly competitive. Brunswick and AMF dominated the market by making some 99% of annual sales. AMF contracts with alley operators were expiring and Brunswick developed an aggressive plan to persuade them to convert to its equipment. (Bowl-Mor also had a

"conversion sale plan.") Bowl-Mor leases were also a target of the plan. There is substantial dispute as to precisely what Brunswick did *vis-a-vis* Bowl-Mor, but for present purposes it is enough to say that Brunswick sales people called on operators using Bowl-Mor equipment with a view to persuading them to "convert." A number of Bowl-Mor lessees defaulted, Bowl-Mor pinsetters were "ripped out" and some conversions were made to Brunswick equipment. Brunswick's record here is that all such changes were the result of wide-spread dissatisfaction with performance of the Bowl-Mor equipment.

At this time in the litigation Brunswick seeks summary judgment as to claims based on alleged interference with: (1) any contractual relationships between Bowl-Mor and operators whose leases were assigned to CIT or GECC; (2) contracts with the operators of Larchmont Lanes and Melody Bowl; and (3) with prospective customers. Before discussing that motion I must first consider a motion by Bowl-Mor for permission to supplement and amend the complaint.

### B.

The complaint was filed on May 25, 1965, the motion was filed on November 16, 1971. As I read Brunswick's memorandum, it does not oppose the motion to supplement, and that will be granted.

The motion to amend seeks to add to the complaint allegations as to violation of anti-trust laws in Illinois, Indiana, Iowa, Michigan, Minnesota, Missouri, Nebraska, New York, Ohio and Wisconsin. Those statutes are apparently designed to prevent or prohibit monopolization. The parties differ over what new facts such allegations will necessarily introduce into the case. Thus Brunswick says that Bowl-Mor would have to show monopoly power by establishing the number of operations of various manufacturers in the states involved; Bowl-Mor disagrees. But it is undisputed that the amendment would require Brunswick to add additional factual matter in relationship to its claims of a superior product, business ability and acumen, or better customer service. And it would add substantial legal questions involving interstate commerce, the effective date of the statutes, statutes of limitations and others.

Liberality of amendment to a pleading is a tradition in the courts of this State and that certainly includes this one. But serious prejudice to one opposing the motion is a reasonable limitation on that liberality. And I find it here. We are almost seven years into the suit, there are ten full files in the court jacket, the case has been marked for trial on two occasions. All things have their season and, as I see it, the season for new factual allegations (of the dimensions proposed) has ended in this case. The motion for leave to amend will be denied.[1]

It does not necessarily follow, however, that plaintiff will be precluded from arguing that evidence received within the perimeter of the present pleadings violates a specific statute of another state. I say this because 10 Del.C. § 4314(a) requires this Court to take judicial notice of the common law and statutes of every state of the United States. If noticing the anti-trust statutes will require new factual inquiries, then that will not be done for the reasons I have stated. In any event, on application counsel will be heard as to § 4314(a) and any other related statutes.

### C.

Turning to the motion for summary judgment, plaintiff argues that Brunswick's implementation of the conversion plan was unlawful because the acts taken induced breaches of contract between the bowling alley operators and Bowl-Mor. Defend-

---

1. In so ruling I make no decision as to whether Brunswick is in violation of a prior order of this court in this case and/or whether plaintiff is entitled to damages for any such violation.

ant says that there were no existing contracts between Bowl-Mor and the lessees who switched because plaintiff had assigned all title and interest in the leases when it sold them to CIT and GECC. Brunswick says that since the assignments were absolute, Bowl-Mor thereafter had no interest in the leases and, hence, it cannot sue for alleged interference with them.

■■■ The general principle applicable to interference with an advantageous business relationship is stated in the Restatement of Torts, § 766 (1939), as follows:[2]

"Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

(a) perform a contract with another, or

(b) enter into or continue a business relation with another

is liable to the other for the harm caused thereby."

A "privilege" is available to a competitor who may, under certain circumstances, purposefully cause a third person not to enter into or continue a business relationship, Restatement, supra, § 768:

"(1) One is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if

(a) the relation concerns a matter involved in the competition between the actor and the competitor, and

(b) the actor does not employ improper means, and

(c) the actor does not intend thereby to create or continue an illegal restraint of competition, and

(d) the actor's purpose is at least in part to advance his interest in his competition with the other.

(2) The fact that one is a competitor of another for the business of a third person does not create a privilege to cause the third person to commit a breach of contract with the other even under the conditions stated in Subsection (1)."

See 9 A.L.R.2d 255. The privilege available to a competitor, as expressed in § 768, has judicial approval in Delaware. Regal Home Distributors, Inc. v. Gordon, Del. Super, 6 Terry (45 Del.) 49, 66 A.2d 754 (1949).

Bowl-Mor and Brunswick were competitors. Brunswick was, therefore, entitled to the privilege of a competitor. It argues that in the absence of contracts between Bowl-Mor and the alley operators who switched, and since it did not maintain an illegal restraint of competition nor make any false representations about Bowl-Mor equipment, it is entitled to judgment on undisputed facts.

■■ Bowl-Mor says that it retained a property interest in the leases assigned to CIT or GECC and therefore has a right to an action based on interference with the contracts. The difficulty is that Bowl-Mor fails to identify what interest it retained in the leases.[3] True it is that Bowl-Mor had post-assignment relationships with the operators: the arrangements with the finance companies required Bowl-Mor to see that the equipment was serviced, maintained and insured. But the existence of those

2. Over twenty separate interferences are claimed by Bowl-Mor in about ten different states. Under the Delaware conflicts law, the law of the state where the tort occurred applies. Friday v. Smoot, Del.Supr., 211 A.2d 594 (1965); in the absence of argument as to that law the Court assumes that the substantive law is the same as ours.

3. As between Bowl-Mor and the finance company, the assignment might be regarded as a secured transaction within the Uniform Commercial Code. Cf. 5A Del. C. § 1–201(37), § 9–101, etc. But any such question is not involved in this case.

duties due the finance company would be a fragile basis on which to conclude that Bowl-Mor retained a "property interest" in the contracts. The short of it is, Bowl-Mor retained no such interest. The sales were complete, the assignments were absolute (all right, title and interest in the account and in the equipment were "sold"), and therefore Bowl-Mor did not have "contracts" with operators within the meaning of § 768 of the Restatement.[4]

I conclude that Brunswick is under no liability to Bowl-Mor for purposely causing alley operators not to perform contracts with it. In sum, there is no liability based upon the Restatement, § 766(a).

■ But paragraph (b) of the Restatement states there is liability for purposefully causing a third person not to continue a business relation with another. Comment b applies this to "unjustified interference with reasonable expectancies of commercial relations even when an existing contract is lacking." A more precise statement of the law appears at 45 Am.Jur. 2d, Interference § 50:

"The basic elements which establish a prima facie tortious interference with a business relationship are the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another."[5]

Here, in a typical case, Bowl-Mor sold equipment to an operator and then entered into a lease with him. Looking at the substance of what took place, it is plain that the lease and the subsequent assignment to CIT and CEEG was simply a way of financing the purchase by the operator. The plan had advantages, of course, for all parties: the operator got the equipment on a lease basis, the finance company placed a loan at interest, and Bowl-Mor received the sale price. But it is equally clear that as between the finance company and Bowl-Mor, the latter assumed the ultimate risk if the former was not paid in accordance with the lease terms; thus Bowl-Mor was obliged to see that the equipment was maintained and insured and there was recourse against it if the lessee defaulted. Certainly the reasonable business expectancy was that the contract would be performed in accordance with its terms and thus Bowl-Mor would benefit from that performance. Bowl-Mor's position does not fall into the classic definition of a third party benefici-

---

4. In a comparable situation the finance company (assignee) may sue to prevent impairment of the contract and thus protect and preserve its interest therein. Inland Finance Corp. v. Champion Cigarette Vend. Co., 260 F.2d 243 (4 Cir. 1958). But the Court's dictum that the assignor "may perhaps" have an action against one who seeks to impair the contract is not helpful here.

5. Other cases applying the principle which prohibits unjustifed interference, absent a contract, are: Zimmerman v. Bank of America National T & S Ass'n., 191 Cal. App.2d 55, 12 Cal.Rptr. 319 (1961); California Beverage & Supply Co. v. Distillers Distributing Corp., 158 Cal. App.2d 758, 323 P.2d 517 (1958); Reichman v. Drake, 89 Ohio App. 222, 100 N.E.2d 533 (1951); Fort Wayne Cleaners and Dyers Association, Inc. v. Price, 127 Ind.App. 13, 137 N.E.2d 738 (1956); United Kosher Butchers Ass'n. v. Associated Synagogues, 349 Mass. 595, 211 N.E.2d 332 (1965); Owen v. Williams, 322 Mass. 356, 77 N.E.2d 318 (1948); Downey v. United Weather Proofing, Inc., 363 Mo. 852, 253 S.W.2d 976 (1953); Lance Television Lab. v. Certified Appliance Co., Sup.Ct.N.Y., 99 N.Y.S.2d 485 (1950); Barton v. Dahmen, 5 Wash.App. 135, 486 P.2d 295 (1971); Calbom v. Knudtzon, 65 Wash. 2d 157, 396 P.2d 148 (1964).

ary, nor was it, as I have said, in a continuing contractual relationship with the operator. But the substance of the entire arrangement gave Bowl-Mor an expectancy of profit from performance of the contract which it had initiated. That expectancy was valid and valuable in a commercial sense, and it is protected in a legal sense. I say that because, on the showing made by plaintiff on the motion, it was Bowl-Mor which was the target of Brunswick's conversion plan; the objective was Bowl-Mor and its equipment, not the finance companies. And a reasonable inference is that Brunswick's activities were directed to Bowl-Mor's expectation.

Thus there is a showing by Bowl-Mor of a valid business relationship or expectancy, knowledge of that by Brunswick, and intentional action by it to cause termination of the relationship. It follows that Bowl-Mor is entitled to an opportunity to develop this at trial and to prove resultant damage. 45 Am.Jur.2d, supra.

■ Brunswick argues that as a competitor its conduct was privileged within the meaning of the Restatement, § 768, because of the absence of contract between Bowl-Mor and the operator and because its alleged conduct meets the tests stated in (a) of that section.

I recognize that the Restatement and many of the cases implicitly may limit the privilege only when there is a contract between the company and a third person. But any such narrow view would make the result depend entirely upon the formality of contract "with the other" and not upon the legal and commercial reality. In my judgment, better and more equitable law looks to the substance of what is involved, not merely to the contractual relationship of the moment. That is the view stated by the Supreme Court of Washington in Calbom v. Knudtzon, supra, and I apply it here: The burden of showing privilege rests upon the interferor and

"[t]he basic issue raised by the assertion of the defense is whether, under the circumstances of the particular case, the interferor's conduct is justifiable, bearing in mind such factors as the nature of the interferor's conduct, the character of the expectancy with which the conduct interferes, the relationship between the various parties, the interest sought to be advanced by the interferor, and the social desirability of protecting the expectancy or the interferor's freedom of action. Restatement, Torts § 767. Some of the privileges and their limitations, which have been recognized, depending upon the circumstances and the factors involved, are legitimate business competition (Restatement, Torts § 768), financial interest (Restatement, Torts § 769), responsibility for the welfare of another (Restatement, Torts § 770), directing business policy (Restatement, Torts § 771), and the giving of requested advice (Restatement, Torts § 772)."

■ The fact that one is a competitor of another for the business of a third person does not as a matter of law create a privilege to cause the third person to commit a breach of contract with a fourth person if that breach will cause damage to the other. There are, of course, conflicting interests in the race for the customer's business. Those interests must be weighed and judgment made after considering the circumstances of the case. And so here. The Court cannot say that on unquestioned facts Brunswick's conduct was privileged. The issue is one for trial.

### D.

Brunswick also seeks summary judgment as to two bowling operations which had used Bowl-Mor equipment: Larchmont Lanes and Melody Bowl.

■ As to Larchmont, the motion must be granted. The undisputed facts show that Brunswick did not sell to or deal with a lessee of Bowl-Mor. While the Brunswick files show transactions with the operators of these lanes, that was after Bowl-Mor's lessee had closed his business. Bowl-

Mor has not established, explicitly or inferentially, a dispute of material fact as to any claim involving Larchmont Lanes.

Melody Bowl had Bowl-Mor equipment in 1962. About that time, a Brunswick representative asked the operator if he would be interested in switching, but a negative answer was given. Melody Bowl did install used Brunswick equipment in 1967 but (a) after the alleys had been closed for ten months and (b) the equipment was bought from a third person, not a party to this action. On this record there is no independent basis for liability, and Brunswick is entitled to summary judgment.

### E.

I turn now to Brunswick's claim that it is entitled to summary judgment as to alleged interference with prospective customers of Bowl-Mor. Brunswick concedes that the complaint alleges such interference; it says, however, that there is no allegation that the interference was illegal or based on false representation.

Certainly not every interference with a prospective customer relationship is unlawful. Our political and legal concepts permit—encourage—competition for a buyer's business. But there are limits, of course, and some of those were stated by Judge Layton in Regal Home Distributors, Inc., v. Gordon, supra. The interference by a competitor may not create or continue an illegal restraint of competition nor may "improper means" be used; and in an opinion in this case Chancellor Seitz stated that Brunswick's conduct must not be "unconscionable . . . [by] . . . the decent standards of the market place."

Applying these tests, it is clear that plaintiff has neither alleged nor made record proof of interference by Brunswick with prospective customers in a way that was "wrongful." "Interference" there may have been, but there has been no showing of improper means, illegal restraint or the

like. Regal Home Distributors, Inc., v. Gordon, supra.

Bowl-Mor argues that discovery still to be undertaken for trial may reveal facts which would establish the unlawfulness of Brunswick's conduct. That may be. But Bowl-Mor is unable to make such allegations or proof now and the Court cannot decide the motion on the basis of what may be. Brunswick is entitled to a ruling now and it has a right to have the motion tested by familiar standards. The motion for summary judgment will be granted as to alleged interference with prospective customers.

\* \* \*

Order on notice.