GENERAL BEVERAGE SALES CO.-
OSHKOSH, a Wisconsin Corporation,
Plaintiff,

v.

EAST SIDE WINERY, a California
Corporation, Defendant.

Civ. A. No. 72-C-246.

United States District Court,
E. D. Wisconsin.

June 23, 1975.

William F. Nelson, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., and Richard J. Rappaport and Robert W. Sacoff, Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for plaintiff.

Eugene O. Gehl, Madison, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action in which plaintiff alleges the breach of an exclusive dealership contract and various antitrust violations on the part of the defendant. The defendant has answered, raised affirmative defenses and counterclaimed, asserting that plaintiff breached the contract, violated the antitrust laws, and resorted to tortious methods of competition. This action is before the court on plaintiff's motions to (1) strike defendant's affirmative defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure on the ground that they are

insufficient as a matter of law, and (2) to dismiss four counterclaims pursuant to Rule 12(b)(6) for their failure to state a claim. For the reasons herein stated, all of plaintiff's motions are denied.

## I. *Facts*

On October 1, 1970, a written agreement was entered into by the parties appointing plaintiff the exclusive wholesale distributor of the defendant's products in certain counties of Wisconsin. On January 25, 1972, defendant terminated the distributorship agreement. The reasons for such termination are in dispute. On April 27, 1972, plaintiff commenced this action claiming that defendant breached the contract and conducted itself in a manner offensive to the antitrust laws. Specifically, plaintiff alleges that the agreement was terminated because plaintiff refused to further abide by certain conditions fixing geographical limits on plaintiff's sales. Plaintiff contends that these conditions are illegal restraints of trade in violation of the antitrust laws. Plaintiff also alleges that defendant granted plaintiff's competitors discriminatorily favorable treatment with regard to various services and facilities, and that such conduct amounted to a violation of § 4 of the Clayton Act (15 U.S.C. § 15) and § 2(d) and (e) of the Clayton Act as amended by the Robinson-Patman Act (15 U.S.C. § 13(d) and (e)).

Defendant answered the complaint raising three affirmative defenses and various counterclaims which plaintiff now seeks to dismiss.

## II. *Motion to Strike Affirmative Defenses*

### A. *In Pari Delicto (In Equal Fault) and Estoppel Defenses*

Defendant contends, by way of affirmative defense, that plaintiff cannot recover treble damages against it under the antitrust laws because plaintiff, as a party to the distributorship contract, was a "willing and knowing participant" in the distribution of defendant's products and as such stands "in pari delicto" with the defendant.

Plaintiff has moved to strike these defenses as legally insufficient in light of *Perma Life Mufflers v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). However, in *Premier Electrical Construction Co. v. Miller-Davis Co.*, 422 F.2d 1132 (7th Cir. 1970), the Seventh Circuit rejected the idea that *Perma Life* represented the total abolition of the *in pari delicto* defense in antitrust actions. The Seventh Circuit stated in 422 F.2d at 1138:

"* * * In *Perma Life,* Mr. Justice Black * * * said, '* * * the doctrine of *in pari delicto,* with all its complex scope, contents, and effects, is not to be recognized as a defense to an antitrust action. * * *' Perma Life Mufflers v. International Parts Corp., supra at 140, 88 S.Ct. at 1985. We believe that Perma Life stands for a more limited rule, however, since Mr. Justice Black expressly reserved the question '* * * whether such truly complete involvement and participation in a monopolistic scheme could ever be a basis, wholly apart from the idea of *in pari delicto,* for barring the plaintiff's cause of action * * *.' Perma Life Mufflers v. International Parts Corp., supra at 140, 88 S.Ct. at 1985. On the basis of the pleadings before him, Mr. Justice Black found that plaintiffs' participation in the illegal agreement with Midas was 'not voluntary in any meaningful sense' and that they 'accepted many of these restraints solely because their acquiescence was necessary to obtain an otherwise attractive business opportunity'. Perma Life Mufflers v. International Parts Corp., supra at 139, 88 S.Ct. at 1985. Thus we believe that *Perma Life* holds only that plaintiffs who do not bear equal responsibility

for creating and establishing an illegal scheme, or who are required by economic pressures to accept such an agreement, should not be barred from recovery simply because they are participants."

 On the basis of *Premier Electrical,* supra, this Court concludes that while there has been a demise in the utility of the *in pari delicto* and related defenses, a limited role continues to exist for these doctrines in the field of antitrust law. The converse holding implicit in *Premier Electrical,* supra, is that if plantiff bears equal responsibility for creating the illegal scheme and has not been coerced by economic pressure to accept such an agreement, participation in the scheme may be an affirmative defense. Defendant's allegation that plaintiff was a "full, willing and knowledgeable participant" alleges the equal responsibility required by *Perma Life* and *Premier Electrical,* and, therefore, the defenses cannot be stricken.

### B. *Statute of Limitations*

Defendant has alleged an affirmative defense based on the applicable statute of limitations, 15 U.S.C. § 15b.[1] Plaintiff contends that conduct on the part of the defendant outside the limitation period is not being alleged for the purpose of collecting pre-statute of limitation damages but is merely to provide evidence to shed light on defendant's conduct within the four-year period allowed by the statute.

 The affirmative defense is merely defendant's way of assuring that damages contrary to the statute of limitations will not be assessed. Plaintiff has specifically stated that it does not press for such damages. Plaintiff fears that refusal to strike the affirmative defense will result in exclusion of evidence of prelimitation period conduct. However, evidence of prelimitation conduct is not inadmissible because of the statute of limitations. *Klein v. American Luggage Works, Inc.,* 206 F.Supp. 924 (D.Del.1962). Accordingly, no need to strike the affirmative defense, which must be affirmatively pled or is waived, is presented.

### III. *Motion to Dismiss Counterclaims*

### A. *Defendant's Second Counterclaim*

Defendant's second counterclaim alleges breach of the contract by plaintiff. Defendant claims plaintiff acted in derogation of an obligation to use its "best efforts" to promote the distribution of defendant's products. The distributorship contract does not expressly create such an obligation. Defendant contends that the law implies a "best efforts" clause under these circumstnaces for the benefit of the defendant.

 Under Wisconsin law such a "best efforts" clause may be implied in an exclusive distributorship contract. *California Wine Assn. v. Wisconsin Liquor Co.,* 20 Wis.2d 110, 121 N.W.2d 308 (1963). The implication of a "best efforts" clause is also mandated by statute. Section 402.306(2) of the Wisconsin Statutes provides:

> "A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale."

Thus, in every "exclusive dealing" contract the law implies an obligation on the buyer to use his "best efforts" in performing the undertaking unless the parties agreed otherwise.

---

1. Section 15b, 15 U.S.C., provides in part:
"Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. * * *"

■ Under the contract presented by this case, plaintiff was obligated to use its "best efforts" to promote the sale of defendant's products by implication. A failure to do so would be an actionable breach, and, therefore, defendant's counterclaim states a cause of action.

### B. *Defendant's Third Counterclaim*

Defendant's third counterclaim contends that plaintiff unlawfully interfered with defendant's ongoing business relationships in the State of Wisconsin. Defendant asserts that plaintiff engaged in a course of conduct calculated to harm defendant's relationship, reputation, and good will with its distributors, retailers, and consumers. Plaintiff contends that the acts complained of are merely competitive and consequently not actionable.

■ A person's business is property, in the pursuit of which he is entitled to protection from tortious interference by a third party. *California Beverage and Supply Co. v. Distillers Distributing Co.,* 158 Cal.App.2d 758, 323 P.2d 517 (1958). Restatement, Torts § 766, adopted by the Wisconsin Supreme Court in *Purtell v. Tehan,* 29 Wis.2d 631, 139 N.W.2d 655 (1966), provides:

" 'Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

" '(a) perform a contract with another, or

" '(b) enter into or continue a business relation with another

is liable to the other for the harm caused thereby.' " 29 Wis.2d at 638, 139 N.W.2d at 659.

However, interference that arises from actual competition is justified and privileged. Restatement of Torts, § 768, provides:

"(1) One is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if (a) the relation concerns a matter involved in the competition between the actor and the competitor, and (b) the actor does not employ improper means, and (c) the actor does not intend thereby to create or continue an illegal restraint of competition, and (d) the actor's purpose is at least in part to advance his interest in his competition with the other."

■ Consequently, if plaintiff employed "improper means" of competition or was not motivated at least in part to advance his own interest, defendant's counterclaim cannot be dismissed. The question of whether plaintiff's conduct was merely competitive or improper is a factual question which cannot be decided on a motion to dismiss.

### C. *Defendant's Fourth Counterclaim*

Defendant's fourth counterclaim is predicated on § 1 of the Sherman Act (15 U.S.C. § 1)[2] and § 4 of the Clayton Act (15 U.S.C. § 15)[3]. Defendant al-

2. Section 1, 15 U.S.C., provides in part:
"Every contract, combination * * * or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *."

3. Section 15, 15 U.S.C., provides:
"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

leges that plaintiff and defendant's competitors conspired and set out upon a course of conduct "to deliberately injure and impair the ability of defendant to compete with plaintiff's co-conspirators." Defendant claims that this alleged conspiracy resulted in a restraint of trade prohibited under 15 U.S.C. § 1.

Under 15 U.S.C. § 1, every conspiracy in the restraint of trade is declared to be illegal. Literally applied, 15 U.S.C. § 1 would outlaw every conceivable combination or contract involving interstate commerce. Consequently, the Supreme Court has read a "rule of reason" into the act. *Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). Thus, 15 U.S.C. § 1 prohibits only unreasonable restraints of trade, and a valid cause of action is stated only if the activity complained of produces such an "unreasonable" restraint of trade. *Parmalee Transportation Co. v. Keeshin,* 186 F.Supp. 533 (N.D.Ill.1960); *Ace Beer Distributors, Inc. v. Kohn, Inc.,* 318 F.2d 283 (6th Cir. 1963).

Although defendant has not specifically alleged an "unreasonable" restraint of trade, such an allegation can be fairly implied from defendant's counterclaim. Whether or not an alleged conspiracy amounted to an "unreasonable" restraint of trade cannot be disposed of on a motion to dismiss. In *Jewel Tea Co. v. Local Unions Nos. 189, 262, etc.,* 274 F.2d 217, 223 (7th Cir. 1960), the Seventh Circuit stated:

"Appellants urge that the agreements in question * * * come within 'the rule of reason', and are therefore not an unreasonable restraint of trade. * * * A close and objective scrutiny of particular conditions and purposes is necessary in each case. * * * Therefore, such a determination cannot be disposed of on a motion to dismiss but must be properly aired in a trial where both parties have an opportunity to offer evidence as to facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual and probable; and the history of the restraint, i. e., the evil believed to exist, the reason for adopting the particular remedy, and the purpose or end sought to be attained. * * *"

Consequently, defendant's fourth counterclaim cannot be dismissed.

### D. *Defendant's Fifth Counterclaim*

Defendant's fifth counterclaim alleges violations of § 4 of the Clayton Act (15 U.S.C. § 15),[4] and §§ 2(d) and 2(e) of the Clayton Act (15 U.S.C. § 13(d) and (e)).[5] Defendant alleges that plaintiff engaged in a course of price discrimina-

---

4. Id., note 3, supra.

5. Section 13(d), 15 U.S.C, provides:
 "It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities."
 Section 13 (e), 15 U.S.C., provides:
 "It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms."

tion with respect to certain of its retail customers in regard to the sale and distribution of the products of defendant and those of defendant's competitors. Defendant alleges that plaintiff granted certain of its retailers discriminatory services and facilities while not making such allowances, services, and facilities available to other retailers.

Plaintiff contends that even if discriminatory practices were engaged in, defendant lacks "standing" to bring an action under the antitrust laws. Plaintiff maintains that only a customer or competitor of one making such discriminations has the right to sue. Defendant argues that the discrimination was undertaken specifically to injure defendant and asserts that this creates an exception to the general rule.

In *Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.,* 454 F.2d 1292, 1295 (2d Cir. 1971), the Second Circuit stated that "in order to have 'standing' to sue * * *, a person must be within the 'target area' of the alleged antitrust conspiracy, i. e., a person against whom the conspiracy was aimed, such as a competitor of the persons sued." Defendant asserts that it is within the "target area" because plaintiff's conduct is aimed directly at defendant, and the harm being suffered is not merely derivative. *Billy Baxter, Inc. v. Coca-Cola Co.,* 431 F.2d 183 (2d Cir. 1970), cert. denied 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971).

The Seventh Circuit believes in the "target area" approach to standing but has formulated its own standards. *Congress Building Corp. v. Loew's, Incorporated,* 246 F.2d 587 (7th Cir. 1957); see also *In Re Multidistrict Vehicle Air Pollution M. D. L. No. 31,* 481 F.2d 122 (9th Cir. 1973). In *In Re Multidistrict Vehicle Air Pollution M. D. L. No. 31,* supra, at 128, the Court announced a broad test to determine standing:

" * * * To attain standing, a plaintiff must thus allege that the antitrust violation injured a commercial enterprise of the plaintiff in the area of the economy in which the elimination of competition occurred. Standing is denied, on the other hand, if the claimant's commercial activity occurred outside that area of the economy. * * * "

▇ Here defendant claims that the specific purpose of the discrimination was to ruin its competitive position. The alleged impact on defendant is direct. Consequently, defendant has standing, and plaintiff's motion is denied.

Defendant's fifth counterclaim also alleges that plaintiff knowingly received discriminations in price, services, and facilities from its coconspirators for the purpose of carrying on activities suppressing the market position of defendant. Plaintiff maintains that §§ 2(d) and 2(e) of the Robinson-Patman Act impose liability only on *sellers* who discriminate and not upon *buyers* who may receive favorable treatment from others.

▇ Neither § 2(d) nor § 2(e) can give rise to a private cause of action against a buyer. The statutes simply fail by their own terms to provide any sanction against one who knowingly accepts discriminations in price, services, or facilities. Consequently, this aspect of defendant's fifth counterclaim does not state a cause of action.

For the reasons stated above,

It is ordered that plaintiff's motion to strike defendant's affirmative defenses be and it hereby is denied.

It is further ordered that plaintiff's motion to dismiss defendant's second, third, fourth, and fifth counterclaims be and it hereby is denied in accordance with this decision and order.