**In the Matter of KEARNEY CHEMICALS, INC., Debtor.**

**MANUFACTURERS HANOVER TRUST COMPANY, Plaintiff-Appellant,**

v.

**KEARNEY CHEMICALS, INC., Defendant-Appellee.**

Bk. No. 77–222.

United States District Court, D. Delaware.

March 30, 1979.

H. Murray Sawyer, Wilmington, Del., and Sheldon Lowe and Andrew DeNatale of Krause, Hirsch & Gross, New York City, for plaintiff-appellant.

Richard G. Elliott, Jr., and Michael A. Meehan of Richards, Layton & Finger, Wilmington, Del., and William M. Kahn and Leo Fox of Whitman & Ransom, New York City, for defendant-appellee.

## OPINION

LATCHUM, Chief Judge.

This is an appeal from an order of the Bankruptcy Judge in a Chapter XI arrangement proceeding dismissing a complaint seeking a determination that a particular debt is nondischargeable.[1] The plaintiff-appellant is Manufacturers Hanover Trust Company (the "plaintiff"). The complaint alleges that the defendant-debtor, Kearney Chemicals, Inc. ("Kearney Chemicals"), is indebted to the plaintiff for willful and malicious injury to its property, and that under § 17(a)(8) of the Bankruptcy Act, 11 U.S.C. § 35(a)(8),[2] that debt is nondischargeable. Specifically, the plaintiff avers that the defendant "conspired to . . . intentionally interfere with and induce a breach" of a contract between Richard J. Kearney and the plaintiff and that it sustained damages in the amount of almost

---

1. The order was entered on January 2, 1979. Bk. Docket Item 155. This Court has jurisdiction to hear the appeal pursuant to 11 U.S.C. §§ 1(10) and 11(a)(10) and Bankruptcy Rule 801.

2. Section 17(a)(8) provides in pertinent part:

   (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (8) are liabilities for willful

two million dollars as a result.[3] The Bankruptcy Judge dismissed the complaint pursuant to Rule 12(b)(6), F.R.Civ.P.,[4] for failure to state a claim upon which relief could be granted. The Judge based the dismissal on her conclusion that the defendant-debtor's actions were privileged, because they were "obviously . . . motivated by a desire to protect its pecuniary interests through an arrangement proceeding." (Bk. Docket Item 154).

■ It is well established that a complaint should not be dismissed for failure to state a claim unless it appears to a certainty that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Scott v. Plante*, 532 F.2d 939, 945 (C.A. 3, 1976); 2A Moore's Federal Practice ¶ 12.08 (2d ed. 1975). The same standard governs this Court's review on appeal of the order of dismissal.

## BACKGROUND

■ On a Rule 12(b) motion to dismiss, the facts alleged in the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The following facts are alleged in the amended complaint filed in the bankruptcy court. (Bk. Docket Item 126).

The defendant Kearney Chemicals is a Delaware corporation. It filed a petition for an arrangement under Chapter XI of the Bankruptcy Act on September 13, 1977. As of June 1977, Richard J. Kearney and his wife, Caroline A. Kearney, owned 88.24 percent and 5.88 percent, respectively, of the common stock of Kearney Chemicals. (*Id.* par. 7). In July 1977, Richard Kearney also owned 100 percent of the common stock of another corporation, Kearney Chemicals of Louisiana, Inc. ("Kearney Louisiana").

Richard Kearney was the President and a director of both Kearney Chemicals and Kearney Louisiana, and, according to the amended complaint, he "dominated and controlled the affairs" of both corporations at all times relevant to this action. (*Id.* pars. 8, 9, 11 and 12).

The plaintiff is a banking corporation organized and existing under the laws of New York. On September 15, 1976, the plaintiff entered into a Credit Agreement and Pledge with Kearney Louisiana by which it "agreed to make loans to Kearney Louisiana, from time to time, in an aggregate principal amount not to exceed $4,300,-000." (*Id.* par. 13). The plaintiff actually advanced over $2,100,000.00 to Kearney Louisiana under the agreement. (*Id.* par. 14). Both Richard Kearney and Kearney Chemicals guaranteed payment of the loan.

To secure his guarantee, Richard Kearney pledged to the plaintiff his shares in Kearney Louisiana and Kearney Chemicals. In Paragraph 9 of the Pledge and Security Agreement, Richard Kearney also made the following commitment:

Without the prior written consent of the Pledgee [the plaintiff], the *Pledgor* [Richard J. Kearney] *agrees* that he will not vote for a [sic] consent to any merger or consolidation of the Company [Kearney Louisiana] or KCI [Kearney Chemicals] *and that he will prevent the Company and KCI from issuing any stock or other securities of any nature in addition to or in substitution for the Pledged Stock,* except that the Company [Kearney Louisiana] may issue additional equity securities for sale to any Person, provided that (i) the proceeds of such sale shall be used to prepay the Pledgee [the plaintiff] . . . and (ii) such sale shall be on terms and conditions satisfactory to the Pledgee as evidenced by the Pledgee's prior written consent, which consent shall not be unreasonably withheld.

---

and malicious injuries to the person or property of another . . ..

**3.** The plaintiff amended its complaint to request an additional two million dollars in punitive damages. Bk. Docket Item 126, p. 8.

**4.** Rule 712(b) of the Rules of Bankruptcy Procedure makes Rule 12(b), F.R.Civ.P., applicable in adversary proceedings before a bankruptcy judge. An action to determine the dischargeability of a debt is an adversary proceeding. Bankruptcy Rule 701(7).

(*Id.* par. 17) (Emphasis supplied). Kearney Chemicals had full knowledge of Richard Kearney's contractual commitment to the plaintiff. (*Id.* par. 18).

The complaint alleges that the defendant Kearney Chemicals "conspired to unlawfully, knowingly, wrongfully, maliciously and intentionally interfere with and induce a breach of the contractual obligation [quoted above] of Richard J. Kearney to [the plaintiff]." (*Id.* par. 19). Two breaches are alleged. First, in June 1977 the Board of Directors of Kearney Chemicals authorized and issued an additional 8,000 shares of common stock to Caroline A. Kearney in consideration of $5,000, thereby diluting the percentage of ownership represented by the pledged shares from 88.24 percent to 15.46 percent. The second breach occurred on July 22, 1977, when the Board of Directors of Kearney Chemicals "knowingly adopted a false and fraudulent resolution by which it acquired all of the issued and outstanding stock of Kearney Louisiana from Richard J. Kearney, its alleged nominee." (*Id.* par. 20(d)). On that same day, Richard Kearney executed a stock power transferring the Kearney Louisiana shares to Kearney Chemicals. (*Id.* par. 20(e)).

Finally, the plaintiff avers that as a result of the acts complained of it sustained willful and malicious injury to its property in the amount of $1,913,204.65. (*Id.* par. 23).

This Court now must determine whether the allegations in the complaint are sufficient to state a claim for nondischargeability under § 17(a)(8) of the Bankruptcy Act, 11 U.S.C. § 35(a)(8).

### Requirements for Nondischargeability

■ Since 1903 provable debts[5] of a bankrupt that are liabilities for "willful and malicious injuries to the person or property of another" have been nondischargeable, regardless of whether the underlying claim had been prosecuted to judgment. *See* 1A Collier on Bankruptcy ¶ 17.01 (14th ed. 1978). This exception to the operation of a discharge currently appears in § 17(a)(8) of the Act. A person acts willfully within the meaning of § 17(a)(8) when he intentionally does something that necessarily will lead to injury. *Id.* ¶ 17.17, at 1650.4. An injury is malicious "if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will." *Id.* (Footnote omitted). In *In re Minsky*, 46 F.Supp. 104 (S.D.N.Y.1942), the court held that a default judgment obtained in an action against the debtor for malicious and willful inducement of a breach of contract was nondischargeable under the precursor of § 17(a)(8). Thus, if the complaint in this action alleges facts sufficient to support a claim for relief against the defendant for intentionally and without just cause interfering with or inducing a breach of the contract between Richard Kearney and the plaintiff, the order dismissing the complaint must be reversed.

Since at least 1945, the courts have looked to state law to determine the validity of a creditor's claim in a bankruptcy proceeding. *See Halpert v. Industrial Commissioner of New York*, 147 F.2d 375 (C.A.2, 1945). In this case the applicable state law has yet to be determined. The parties agree that the only possibilities are New York, Florida and Delaware. The Bankruptcy Judge granted the motion to dismiss on the ground that the result would be the same regardless of which State's law she applied.[6] It is true that the courts in all three states have followed the Restatement

---

**5.** Section 63(a)(8) of the Act, 11 U.S.C. § 103(a)(8), provides: "(a) Debts of the bankrupt may be proved and allowed against his estate which are founded upon . . . (8) contingent debts and contingent contractual liabilities." Since the defendant in this case has not challenged the provability of the debt alleged to be nondischargeable, the Court will assume for purposes of this appeal that it is a provable debt.

**6.** The Bankruptcy Judge mentioned only Florida and New York in her decision and this might be construed as an implicit holding that the law of Delaware is not controlling. This Court will not infer such a finding from the Judge's opinion, because the parties on appeal have neither advanced that position nor brought to this Court's attention any facts in the record that would warrant a conclusion at this time that Delaware law is inapplicable.

of Torts, but as the discussion below illustrates, there are a few variations among them that may be material to the outcome of this case. To uphold the order of dismissal, therefore, this Court must conclude that the complaint is insufficient under the laws of all three States—New York, Florida and Delaware.

### Inducement of a Breach of Contract

The complaint alleges that the defendant induced Richard Kearney to breach his obligation to the plaintiff bank to prevent the defendant and Kearney Louisiana from issuing any stock in addition to or in substitution for the pledged stock. Section 766 of the Restatement of Torts (1939) states the general principle applicable to interference with a contractual relationship:

> [O]ne who, without a privilege to do so, induces . . . a third person not to
>
> (a) perform a contract with another . . . is liable to the other for the harm caused thereby.

The recently promulgated Restatement (Second) of Torts § 766 (1979)[7] embodies the same principle, but speaks in terms of the propriety of intentional interferences with the performance of a contract rather than privilege.[8]

■ Kearney Chemicals, the defendant, first challenges the sufficiency of the complaint by arguing that it could not have induced Richard Kearney to breach his contract, because the complaint itself alleges that Richard Kearney dominated and controlled Kearney Chemicals. Although this apparent inconsistency may hamper the plaintiff in proving its case, it does not completely foreclose the plaintiff from proving a set of facts that would entitle it to relief. The comments to § 766 under both the Restatement and the Restatement Second indicate that:

> The word "induces" refers to the situations in which A causes B to choose one course of conduct rather than another. Whether A causes the choice by *persuasion* or intimidation, B is free to choose the other course if he is willing to suffer the consequences. Thus inducement operates on the mind of the person induced . . . .. The essential thing is the intent [or purpose] to cause the result.[9]

A simple request or even a statement unaccompanied by any specific request but having the same effect as if one had been made may result in inducement within the meaning of § 766. Restatement, *supra*, § 766, comment f.

■ The complaint alleges that the defendant Kearney Chemicals, "its officers, directors, agents, attorneys and employees, jointly and severally," conspired to interfere with and induce a breach of the contract by Richard Kearney. Without any discovery, the Court cannot be certain that an officer or agent of Kearney Chemicals, other than Richard Kearney, did not conceive the idea of authorizing and issuing more shares and then persuade Richard Kearney to go along with it. Thus, the fact that the defendant could not force Richard Kearney to cooperate does not preclude a finding that it induced a breach of his contract with the plaintiff within the meaning

---

7. The final volume of the Restatement (Second) of Torts containing §§ 708–951 was adopted and promulgated by the American Law Institute on May 19, 1977. The official text, however, was not published until very recently, which explains why the parties failed to bring the applicable provisions of the Restatement Second to the attention of either the Bankruptcy Judge or this Court. Unless otherwise noted, all references to the Restatement will be to the First Restatement of Torts (1939).

8. Restatement (Second) of Torts § 766 reads as follows:

"§ 766. Intentional Interference with Performance of Contract by Third Person

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

Section 766B of the Restatement Second deals with intentional interference with a prospective contractual relation.

9. Restatement, *supra*, § 766, comment d; Restatement Second, *supra*, § 766, comment h.

of § 766.[10] Whether the defendant's conduct was privileged, however, requires a separate inquiry.

*The Pecuniary Interest Privilege*

As an alternative ground for dismissal, the defendant argues that, even if it did interfere with or induce a breach of the plaintiff's contract with Richard Kearney, it was privileged to do so because it had a substantial pecuniary interest in seeing that the contract was breached. The Bankruptcy Judge agreed with the defendant and dismissed the complaint on the basis of the pecuniary interest privilege. The Judge cited three cases to support her decision. One of the cases, *Serafino v. Palm Terrace Apartments, Inc.,* 343 So.2d 851 (Fla.Dist. Ct.App.1976), concerned an alleged interference with a contractual relationship. The other two cases involved inducement of a breach of contract. *See Babson Brothers Co. v. Allison,* 337 So.2d 848 (Fla.Dist.Ct. App.1976), *cert. denied,* 348 So.2d 944 (Fla. 1977); *Morrison v. Frank,* 81 N.Y.S.2d 743 (Sup.1948). In each case, the court held that the defendant's financial interest rendered its conduct privileged. Because the *Babson* and *Morrison* courts relied upon the Restatement, this Court will begin its analysis by reviewing the relevant sections of the Restatement.

Section 767 sets forth as a general proposition the factors to be considered in determining whether a defendant's conduct in any particular situation is privileged. Those factors are:

  (a) the nature of the actor's conduct,

  (b) the nature of the expectancy with which his conduct interferes,

  (c) the relations between the parties,

  (d) the interest sought to be advanced by the actor and

  (e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand.

The importance of the individual factors varies with the facts of each case; courts must appraise the several factors and evaluate their comparative weight to determine whether an actor's conduct is privileged in a particular situation. *See id.,* comment a. The Restatement (Second) of Torts adheres to the same principles.[11]

The Restatement also recognizes several specific privileges covering situations where application of the factors listed in § 767 has produced identifiable decisional patterns. If the conditions for one of these specific privileges exist, the court may hold the defendant's conduct privileged without going through the balancing of interests prescribed by § 767. The privilege relevant to this case is defined in § 769, which reads:

  One who has a financial interest in the business of another is privileged purposely to cause him not to enter into or continue a relation with a third person in that business if the actor

    (a) does not employ improper means and

    (b) acts to protect his interest from being prejudiced by the relation.

It is clear that the pecuniary interest privilege referred to by the Bankruptcy Judge is based upon § 769. The plaintiff contends that privilege is not applicable in

---

**10.** Another shortcoming of the defendant's domination argument is that it ignores the other two causes of action asserted by the plaintiff, which at least arguably do not require a causal link between the defendant's conduct and Richard Kearney's decision to breach the contract. Those causes of action are for interference with the plaintiff's contractual rights, *see Serafino v. Palm Terrace Apartments, Inc.,* 343 So.2d 851, 852 (Fla.Dist.Ct.App.1976), and for "intentional conduct carried on with knowledge of the existence of a contractual obligation and the belief that intentional interference therewith would follow." (Docket Item 21, p.

31). The Court expresses no opinion on the merits of those claims other than to note that the fact that Richard Kearney may have dominated and controlled the affairs of Kearney Chemicals does not of itself warrant dismissal of either of them under Rule 12(b)(6).

**11.** Section 767 of the Restatement Second, although worded differently, retains the substance of its predecessor. Seven factors are enumerated—the original five plus "the actor's motive" and "the proximity or remoteness of the actor's conduct to the interference."

the context of this case for two reasons: (1) the defendant's interest in Richard Kearney is not a financial interest within the meaning of § 769 and (2) the financial interest privilege does not apply to the causing of a breach of contract. The Court will consider those contentions in reverse order.

Comment d to § 769 reads: "The rule stated in this Section does not apply to the causing of a breach of contract. . . ." This limitation on the applicability of the financial interest privilege reflects the fact that contractual rights are more definite than informal commercial expectancies and traditionally receive greater protection. *See* Restatement, *supra,* § 767, comment c. Thus, Section 769 indicates that a financial interest in the nature of an investment ordinarily will outweigh another's interest in a prospective contractual relation or some less formal business expectancy. Whether a financial interest will outweigh another's interest in an existing contract of a definite term cannot be predicted with confidence, however, and the Restatement advises the courts to decide that question on a case by case basis using the factors enumerated in § 767, rather than the *per se* rule stated in § 769.

The defendant argues that the courts in New York, Florida and Delaware have applied § 769 in cases involving breaches of contractual relationships and, therefore, implicitly have rejected the limitation stated in comment d. New York has indeed recognized the financial interest privilege in a breach of contract context. *See Felsen v. Sol Cafe Manufacturing Corp.,* 24 N.Y.2d 682, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969); *Morrison v. Frank,* 81 N.Y.S.2d 743 (Sup.1948). The Florida and Delaware courts, however, have never applied the privilege to absolve a defendant from responsibility for interfering with a contract as definite as the one breached in this case. One of the Florida cases cited by the defendant involved a failure to renew a contract that was terminable at will and expired by its terms after one year. *Babson, supra,* 337 So.2d 849–50. While such contracts represent more than a mere expectancy of prospective advantage, they receive much more limited protection than contracts for a definite term. Prosser, Law of Torts § 129, at 932–33 (4th ed. 1971); *see* Restatement Second, *supra,* § 766, comment g (interference with contract terminable at will closely analogous to interference with prospective contractual relations). The other . Florida case, *Serafino, supra,* is even more clearly distinguishable. The defendant in *Serafino* exercised its right under a lease to disapprove a proposed assignment of the lease by the lessee. 343 So.2d at 852. This Court is aware of no Delaware case that has applied § 769 of the Restatement.[12] Lastly, the Court notes that § 769 of the Restatement Second expressly incorporates the limitation contained in comment d to the original § 769 in that it applies only to intentional interference with "a prospective contractual relation."[13]

Against this background, the Court concludes that Florida and Delaware probably would not have applied § 769 in the circumstances of this case. They would have resorted to the ad hoc balancing prescribed by § 767 instead. Whether the New York

---

**12.** The defendant cited *Bowl-Mor Co. v. Brunswick Corp.,* 297 A.2d 61 (Del.Ch.1972). The *Bowl-Mor* case involved the business competition privilege (§ 768) and not the financial interest privilege. Moreover, the *Bowl-Mor* court recognized and respected the language limiting the business competition privilege to prospective business relationships. *Id.* at 66. This suggests that the Delaware courts would follow comment d to § 769 and similarly limit that section's applicability.

**13.** Restatement Second, *supra,* § 769 reads:

§ 769. Actor Having Financial Interest in Business of Person Induced

One who, having a financial interest in the business of a third person intentionally causes that person not to enter into a *prospective* contractual relation with another, does not interfere improperly with the other's relation if he

(a) does not employ wrongful means and

(b) acts to protect his interest from being prejudiced by the relation.

(Emphasis supplied). Comment b states that the rule does not apply to the causing of a breach of contract.

courts would be swayed by the Restatement Second to view the financial interest privilege more narrowly need not be decided, for a more fundamental consideration also counsels against reliance on § 769 in this case.

Comment a to § 769 defines a financial interest as "an interest in the nature of an investment. A part owner of the business, as for example a partner or stockholder, has at least such an interest." The only interest asserted by the defendant Kearney Chemicals is an interest in the contract between Richard Kearney and the plaintiff. The defendant argues that it was in its interest to file a Chapter XI petition and attempt to reach an arrangement with its creditors, but that it could not realistically hope to do so as long as the plaintiff held a controlling stock interest in Kearney Chemicals. Thus, the breach of Richard Kearney's contract was necessary to dilute the plaintiff's stock interest in the defendant.

This Court seriously doubts that the interest asserted by the defendant falls within the ambit of a financial interest for purposes of § 769. This is not a case in which someone who has invested money in another tries to influence that person to act in a certain way in order to protect or realize a greater return on his investment. Nor is the interest asserted here comparable to the interests involved in any of the cases relied upon by the Bankruptcy Judge. In *Morrison v. Frank, supra,* the defendant was a stockholder of the corporation he sought to influence.[14] The defendant in *Serafino, supra,* was sued for exercising its right under a lease to disapprove the assignment of that lease by the lessee, who was a tenant in a cooperative apartment complex. Finally, *Babson, supra,* involved the termination for unsatisfactory performance of a dairy farm equipment dealer's contract by his regional distributor at the behest of the defendant manufacturer. The distributor and the manufacturer were owned and directed by the same people.

The *Babson* court held that the manufacturer had a clear financial interest in its distributors' contracts with dealers of its products. 337 So.2d at 851. In contrast, the defendant here seeks protection for its actions to transfer control of its financially troubled business from a stranger to a friend of management by means of a breach of the stranger's contractual rights.

This Court finds the interest asserted by the defendant Kearney Chemicals to be qualitatively different from the interests generally held to be privileged under § 769. Although the term "financial interest" could be construed expansively to cover this situation, such a construction would ignore the intent of the draftsmen of the Restatement. Section 769 was intended to govern a routine and often repeated factual situation. The facts in the case at bar are extremely unusual and do not readily come within the reach of § 769. The proper approach is to determine the existence *vel non* of a privilege in this case by carefully appraising and balancing the factors set forth in § 767.

The decision of the Delaware Court of Chancery in *Bowl-Mor, supra,* supports this position. There the defendant Brunswick asserted the privilege of a business competitor as defined in § 768. The court acknowledged that § 768 taken literally could be construed to warrant summary judgment in the defendant's favor, but only at the expense of exalting form over legal and commercial reality. *Id.* The following statement of the court readily can be applied in this case.

> The burden of showing privilege rests upon the interferor and "[t]he basic issue raised by the assertion of the defense is whether, under the circumstances of the particular case, the interferor's conduct is justifiable, bearing in mind such factors as the nature of the interferor's conduct, the character of the expectancy with which the conduct interferes, the relationship between the various parties, the

---

14. The defendant in the other New York case relied upon by Kearney Chemicals was the sole stockholder of the corporation it induced to act.

*Felsen v. Sol Cafe Mfg. Corp.,* 24 N.Y.2d 682, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969).

interest sought to be advanced by the interferor, and the social desirability of protecting the expectancy or the interferor's freedom of action. Restatement, Torts § 767. . . .

. . . There are, of course, conflicting interests in the race for the customer's business. *Those interests must be weighed and judgment made after considering the circumstances of the case.* And so here. The Court cannot say that on unquestioned facts [the defendant's] conduct was privileged. *The issue is one for trial.*

*Id.* at 66, quoting *Calbom v. Knudtzon,* 65 Wash.2d 157, 396 P.2d 148 (1964).

■ The allegations in the complaint in this action are sufficient to withstand a motion to dismiss based on a claim of privilege. The nature of Kearney Chemicals' conduct is questionable, especially its belated statement that Richard Kearney held the stock of Kearney Louisiana as its nominee. The complaint alleges that the defendant's resolution proclaiming that fact was false and fraudulent. (Bk. Docket Item 126, par. 20(d)). The defendant's conduct interfered with a contractual relationship of the plaintiff which was fully deserving of protection. All three parties involved had relationships to one another which further complicate the balancing required. Finally, the interest sought to be advanced by Kearney Chemicals and the social desirability of protecting its freedom of action in this context is obviously open to dispute. A full and informed appraisal of these factors is impossible without further development of the factual record.

■ The defendant's last argument to the Bankruptcy Judge in favor of dismissal was that the plaintiff could prove no damages since the stock of both Kearney Chem-

icals and Kearney Louisiana is valueless. The amended complaint alleges that the plaintiff suffered injury to its property in the amount of $1,913,204.65, exclusive of additional interest, costs and expenses. (Bk. Docket Item 126, par. 23).[15] For purposes of a Rule 12(b)(6) motion to dismiss that allegation must be accepted as true; therefore, the complaint could not be dismissed on the ground that the plaintiff could not establish any damages.

In light of the Court's disposition of the substantive issues raised on this appeal, it is unnecessary to address the plaintiff's other claims of error.[16] The order of the Bankruptcy Judge will be reversed and the case remanded for further proceedings consistent with this opinion.

---

**15.** The parties agree that that sum represents the unpaid balance of the loan to Kearney Louisiana.

**16.** The plaintiff argued that the Bankruptcy Judge committed reversible error by: (1) failing to exclude from consideration matters outside the amended complaint; (2) effectively converting the motion to dismiss into a motion for

summary judgment under Rule 56, F.R.Civ.P., without giving plaintiff notice thereof and an opportunity to present pertinent factual material as required by Rule 12(b)(6); (3) failing to determine the applicable state law; and (4) taking judicial notice of the schedules and statements filed in connection with the defendant's Chapter XI petition.