IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

KATHLEEN MORGAN,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      C.A. No. 9324-ML
                                    )
DAVID CARPENTER,                    )
                                    )
            Defendant.              )


MASTER'S REPORT
(Motion to Dismiss)

Date Submitted:  September 30, 2014
Final Report:  December 18, 2014


Kathleen Morgan, prose, Plaintiff.

James S. Green, Sr., Esquire and Jared T. Green, Esquire, of SEITZ VAN OGTROP & GREEN, P.A., Wilmington, Delaware; Attorneys for Defendant.


LEGROW, Master

The plaintiff, whose wholly-owned corporation previously owned three successful sandwich franchises in Delaware, alleges that a former business associate breached an oral agreement, committed fraud, was unjustly enriched, and interfered with her business relations, among other things. The plaintiff, however, seeks only monetary damages and all but one of her claims are legal in nature. Because I conclude that the plaintiff fails to state a claim as to the only equitable claim alleged in the complaint, I recommend that the Court dismiss that claim with prejudice and dismiss the remaining claims without prejudice so the plaintiff may transfer the case to the Superior Court.

**BACKGROUND**

The following facts are drawn from the complaint and its exhibits, giving the plaintiff the benefit of all reasonable inferences. The plaintiff, Kathleen Morgan, is the sole shareholder of Turkeys Inc. ("Turkeys"), a Delaware corporation that – before the events at issue in this case – owned three Capriotti's franchises: Capriotti's Newark, Capriotti's Kirkwood, and Capriotti's Hockessin.[1] The defendant, David Carpenter, was a business associate of Ms. Morgan. Mr. Carpenter is one member of BDK Enterprises LLC ("BDK"), which is a Delaware limited liability company.[2] Mr. Carpenter previously invested in Turkeys' franchises and was a partner with Ms. Morgan and/or Turkeys in two Capriotti's franchises in Sussex County.[3]

---

[1] Verified Compl. ¶ 37.
[2] *Id.* ¶ 39; *Morgan v. Carpenter*, C.A. No. 9324-ML (Sept. 30, 2014) (TRANSCRIPT) (hereinafter "Tr.") at 31 (Ms. Morgan acknowledging that Mr. Carpenter is not the sole member of BDK).
[3] Verified Compl. ¶¶ 41-42; Tr. at 22-23.

1

The allegations underlying Ms. Morgan's current complaint (the "Complaint") arise from earlier litigation in this Court involving Ms. Morgan, another individual, Marc Ham, and their respective entities (the "APA Litigation"). In May 2011, Mr. Ham and an entity called Ham & Turkeys, LLC ("H&T") filed an action against Ms. Morgan and Turkeys seeking specific performance of an asset purchase agreement (the "APA").[4] Under the APA, Turkeys and Ms. Morgan purportedly agreed to transfer to H&T all of Turkeys' assets, including the three Capriotti's franchises, in exchange for $750,000 and a 49% stake in H&T.[5] Shortly after the APA Litigation was filed, Turkeys and Ms. Morgan entered into third party funding agreement (the "TPF Agreement") with BDK, under which BDK agreed to pay up to $250,000 to fund the defense of the APA Litigation.[6] In return for BDK's agreement to fund the litigation, Turkeys and Morgan executed a promissory note, secured by Turkeys' assets, along with an option (the "Option") that gave BDK a right

> to purchase the Kirkwood Highway and Limestone Road franchises (each a 'Target Store' and collectively the 'Target Stores') including all assets of each Target Store (e.g., physical assets and equipment, accounts receivable, property leases, franchise rights, etc.), up to a maximum purchase price of $1,000,000 in the aggregate, inclusive of any funds advanced for litigation or other expenses.[7]

Ms. Morgan alleges that this Option was the product of a misunderstanding between herself and BDK, because Ms. Morgan thought the Option gave BDK the right

---

[4] *See Ham v. Morgan*, C.A. No. 6495-VCL.
[5] Verified Compl. Ex 3. *See also Morgan v. Scott*, 2014 WL 4698487, at *1 (Del. Sept. 22, 2014) (describing APA).
[6] Verified Compl. Ex. 3.
[7] *Id.* Ex. 3 at 2-3.

2

to purchase one, rather than two, of Turkeys' franchises.[8] She asserts that she and Mr. Carpenter entered into a verbal agreement (the "Oral Agreement") on August 1, 2011 whereby Mr. Carpenter agreed to cancel the TPF Agreement, including the Option, if Ms. Morgan paid Mr. Carpenter $110,409.50 and also paid the attorneys' fees BDK owed under the TPF Agreement.[9] Ms. Morgan contends the TPF Agreement, including the Option, was "legally annulled" by this Oral Agreement and that she relied on the Oral Agreement when she settled the APA Litigation on August 15, 2011.[10] The stipulated settlement signed by the parties to the APA Litigation required Turkeys and Ms. Morgan to pay Mr. Ham and H&T $1,050,000.00 in exchange for Turkeys retaining 100% ownership of its assets.[11]

Shortly after the settlement of the APA Litigation, Ms. Morgan contends she tendered payment to Mr. Carpenter as required by their Oral Agreement, but Mr. Carpenter refused to accept the payment and later enforced the Option, acquiring control of Turkeys' Newark and Kirkwood Highway franchises.[12]

Ms. Morgan alleges in the Complaint seven causes of action and seeks monetary damages in the amount of $3.5 million, plus such other and further relief as the Court deems just. The counts of the Complaint may be summarized as follows:

- Count I, although styled as a claim for "Breach of Contract Specific Performance," does not actually seek specific performance and instead is a standard breach of contract claim in which Ms. Morgan alleges Mr. Carpenter breached their Oral

---

[8] Id. ¶ 10.
[9] Id. ¶¶ 15-16.
[10] Id. ¶¶ 11, 18.
[11] Id. ¶¶ 18-20 & Ex. 3.
[12] Id. ¶¶ 25-28.

Agreement to cancel the TPF Agreement and owes her damages caused by that breach.[13]

- In <u>Count II</u>, Ms. Morgan alleges that Mr. Carpenter tortiously interfered with her "business relations" by causing "the termination of the expected relationship with Diane Rizzo and expected settlement outcome of return of all three franchises to [Ms. Morgan]."[14] According to Ms. Morgan, she had the "assurance and confidence in Diane Rizzo as source of strong arm, witness and money, should the need arise, to meet terms of 'Settlement Term Sheet'" in the APA Litigation, but Mr. Carpenter interfered with that relationship by stating he was going to exercise the Option rather than cancel the TPF Agreement.[15]

- In <u>Count III</u>, Ms. Morgan asserts a claim for "Abuse of Process," alleging Mr. Carpenter (1) had an ulterior purpose for entering into the TPF Agreement, (2) "attempted to force [the Option] before trial, [sic] and during incidences when [Mr. Carpenter] intentionally interfered with [the] use of incriminating evidence obtained by [Ms. Morgan] against [Mr. Ham]," and (3) "played out litigation in ways threatening to sustenance of goodwill and stability of [Ms. Morgan and Turkeys]."[16]

- <u>Count IV</u> is a claim for equitable fraud in the inducement relating to the TPF Agreement. In support of this claim, Ms. Morgan alleges that Mr. Carpenter made a number of false representations to Ms. Morgan in an effort to induce her to enter into the TPF Agreement, and that Ms. Morgan and Mr. Carpenter were in a "special relationship" by virtue of the other business partnerships in which they were engaged.[17]

- <u>Count V</u> is a claim that Mr. Carpenter breached the implied covenant of good faith and fair dealing in the TPF by acting in bad faith and using the APA Litigation for "self-indulgence" and by unfairly and inequitably enforcing the Option.[18]

- In <u>Count VI</u>, Ms. Morgan alleges that Mr. Carpenter committed negligence by failing to cancel the TPF.[19]

- In <u>Count VII</u>, Ms. Morgan contends Mr. Carpenter was unjustly enriched by the transfer of the two franchises when the Option was exercised. Ms. Morgan alleges

---

[13] *See* Tr. at 31 (Ms. Morgan acknowledging that she is not seeking specific performance); Verified Compl. ¶¶ 45-50.
[14] Verified Compl. ¶ 54.
[15] *Id.* ¶¶ 27, 43, 51-57.
[16] *Id.* ¶¶ 58-63.
[17] *Id.* ¶¶ 64-71.
[18] *Id.* ¶¶ 72-79.
[19] *Id.* ¶¶ 80-85. The Complaint mistakenly numbers this claim as Count IV, but it is the sixth count in the Complaint.

that Mr. Carpenter unjustly acquired title to the two franchises and Ms. Morgan was harmed in the process.[20]

On March 11, 2014, Mr. Carpenter filed a motion to dismiss the Complaint on the basis that the Court lacked subject matter jurisdiction and the Complaint failed to state a claim upon which relief could be granted. The parties briefed that motion and argument was held on September 30, 2014. Shortly after argument, Ms. Morgan filed a "Supplement to Hearing" in which Ms. Morgan stated that "a remedy of [Mr. Carpenter's] breach of contract would be the return of the two franchises that were stripped away from [Ms. Morgan]."[21] This relief is not sought in the Complaint, however, nor does Ms. Morgan explain the legal basis on which she would be entitled to that relief.

**ANALYSIS**

This Court will dismiss a complaint under Court of Chancery Rule 12(b)(1) if it appears from the record that the Court lacks subject matter jurisdiction over the claims. This Court is one of limited jurisdiction and only may acquire subject matter jurisdiction over a claim if: (1) the claim invokes an equitable right, (2) the claim seeks equitable relief when there is no adequate remedy at law, or (3) there is a statutory grant of jurisdiction permitting this Court to resolve the claim.[22] If the Court has jurisdiction over at least one claim, it may in its discretion hear the remaining claims between the parties

---

[20] *Id.* ¶¶ 82-87. The Complaint mistakenly numbers this claim as Count V, but it is the seventh count in the Complaint.

[21] *See* Supplement to Hearing dated Oct. 2, 2014.

[22] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004); *Medicis Pharm. Corp. v. Anacor Pharm., Inc.*, 2013 WL 4509653, at *3 (Del. Ch. Aug. 12, 2013); *Christiana Town Ctr. LLC v. New Castle Cnty.*, 2003 WL 21314499, at *3 (Del. Ch. Jun. 6, 2003).

under the "clean-up" doctrine, even if the remaining claims involve legal rights and remedies.[23] The plaintiff bears the burden of establishing this Court's jurisdiction.[24]

At oral argument, Ms. Morgan conceded that she is seeking only monetary damages, rather than any form of equitable relief. The "Supplement to Hearing" Ms. Morgan filed on October 2, 2014 attempts to introduce a request for equitable relief, apparently through some form of rescission of the TPF Agreement, the Option, or the transfer of the two franchises to BDK. Even if that request had been included in Ms. Morgan's complaint, however, it would not form a basis for this Court to exercise jurisdiction over the case because the Court cannot enter an order for rescission against Mr. Carpenter. It is BDK, not Mr. Carpenter, that was a party to the TPF Agreement, exercised the Option, and took title to the franchises. Put another way, whether Ms. Morgan has a viable claim against BDK entitling her to rescission, it is not a remedy she can obtain from Mr. Carpenter, who is the only defendant named in this action. Accordingly, Ms. Morgan's belated attempt to add a prayer for equitable relief is not sufficient to confer jurisdiction on this Court.

With the exception of Ms. Morgan's claim for equitable fraud in the inducement, the balance of the claims in the complaint do not assert an equitable right or a claim over which this Court has statutory jurisdiction. If, however, Ms. Morgan states a claim for equitable fraud, this Court may in its discretion retain jurisdiction over the remaining claims in the complaint. Mr. Carpenter argues that Ms. Morgan's claim for fraud in the

---

[23] *Willis v. PCA Pain Ctr. of Va., Inc.*, 2014 WL 5396164, at \*2 (Del. Ch. Oct. 20, 2014).
[24] *Medicis Pharmaceutical Corp.*, 2003 WL 4509652, at \*3; *Getty Ref. & Mktg. Co. v. Park Oil, Inc.*, 385 A.2d 147, 149 (Del. Ch. 1978).

inducement fails to state a claim under Rule 12(b)(6) because Ms. Morgan failed to plead the existence of a fiduciary relationship between herself and Mr. Carpenter. In evaluating a motion to dismiss under Rule 12(b)(6), this Court accepts the well-pleaded factual allegations in the complaint as true, accepts even the vague allegations as well-pleaded if they provide the defendant notice of the claim, draws all reasonably inferences in favor of the plaintiff, and dismisses the claim only if there is not a reasonably conceivable set of circumstances, susceptible of proof, under which the plaintiff could recover.[25]

Equitable fraud is broader than common law fraud and "allows courts of equity to address fraud in all of its forms, unhampered by the formalism that traditionally limited the common law courts."[26] To state a claim for equitable fraud, however, a plaintiff must plead special equities, typically the existence of a special relationship between the parties or the availability of equitable remedies.[27] In the complaint, Ms. Morgan alleges that she and Mr. Carpenter were in a fiduciary relationship by virtue of their partnership in two Capriotti's franchises in Sussex County. At argument, however, she unequivocally disclaimed any reliance on that partnership as a basis for alleging a fiduciary relationship and explained that the fiduciary relationship with Mr. Carpenter was created by virtue of the TPF Agreement.[28]

In other words, Ms. Morgan contends that Mr. Carpenter fraudulently induced her to enter into the TPF Agreement and that the special relationship required to state a claim

---

[25] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[26] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 144 (Del. Ch. 2009).

[27] *Zutrau v. Jansing*, 2014 WL 3772859, at *14 (Del. Ch. July 31, 2014).

[28] *See* Tr. at 25-26.

for equitable fraud arose from that Agreement. There are at least two problems with that argument. First, and most fundamentally, even if Ms. Morgan is correct that the TPF Agreement created a fiduciary relationship between her and Mr. Carpenter, that relationship could not have arisen until the TPF Agreement was signed, and therefore it could not have existed at the time Mr. Carpenter allegedly induced Ms. Morgan to sign the Agreement. Second, the TPF Agreement was not between Ms. Morgan and Mr. Carpenter, but between Ms. Morgan, Turkeys, and BDK. Even if the agreement created a special relationship between the parties, that relationship was between Ms. Morgan and Turkeys on the one hand and BDK on the other hand. Mr. Carpenter's status as a member of BDK could not bring him into a fiduciary relationship with Ms. Morgan.

The remaining claims alleged in the complaint do not provide any independent basis for this Court to retain jurisdiction. Count I is a breach of contract claim seeking monetary damages, which falls squarely within the jurisdiction of the Superior Court.[29] Ms. Morgan's tortious interference and negligence claims,[30] Counts II and VI, are legal claims that – assuming Ms. Morgan proves the necessary elements of those claims – may be remedied by an award of monetary damages.[31] Similarly, the abuse of process claim alleged in Count III is a legal claim for which there is an adequate remedy at law.[32] Finally, although this Court has jurisdiction to hear claims for breach of the implied

---

[29] *See Candlewood Timber Gp, LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 998 (Del. 2004).

[30] This claim appears to be one for ordinary negligence, rather than negligent misrepresentation. To the extent Ms. Morgan was attempting to plead a claim for negligent misrepresentation, over which this Court would have jurisdiction, that claim is equivalent to a claim for equitable fraud and would fail for the reasons discussed above.

[31] *See Int'l Bus. Machines Corp. v. Comdisco, Inc.*, 602 A.2d 74, 79 (Del. Ch. 1991) (citing *Bowl-Mor Co., Inc. v. Brunswick Corp.*, 297 A.2d 61 (Del. Ch. 1972)).

[32] *Nicotra v. Rowe*, 2000 WL 389988, at *4 (Del. Ch. Mar. 17, 2000).

covenant of good faith and fair dealing and for unjust enrichment when equitable remedies are sought in connection with those claims, jurisdiction properly lies in the Superior Court when the only requested relief is for monetary damages.[33] Because Ms. Morgan's remaining claims are purely legal in nature and may adequately be remedied by an award of money damages, and because Ms. Morgan's sole equitable claim fails to state a claim upon which relief can be granted, this Court has no basis to retain jurisdiction over this action.

**CONCLUSION**

For the foregoing reasons, I recommend that the Court enter an order dismissing Count IV (Equitable Fraud in the Inducement) with prejudice for failure to state a claim under Rule 12(b)(6), and dismiss the remaining counts without prejudice for lack of subject matter jurisdiction under Rule 12(b)(1) in order to allow Ms. Morgan to transfer her legal claims to the Superior Court under 10 *Del. C.* § 1902. This is my final report and exceptions may be taken in accordance with Rule 144.

Respectfully submitted,

/s/ *Abigail M. LeGrow*
Master in Chancery

---

[33] *See Kostyszyn v. Martuscelli*, 2014 WL 3510676 (Del. Ch. July 14, 2014) (dismissing claim for breach of implied covenant because no equitable remedy was sought) (Master's Report); *TWA Res. v. Complete Prod. Servs., Inc.*, 2013 WL 1304457 (Del. Super. Mar. 28, 2013) (exercising jurisdiction over implied covenant claim); *Landry v. Mabe Bridge & Shore, Inc.*, 2012 WL 5944388 (Del. Super. Nov. 26, 2012) (same); *Alltrista Plastics, LLC v. Rockline Indus., Inc.*, 2013 WL 5210255, at *10 (Del. Super. Sept. 4, 2013) (holding that the Superior Court has jurisdiction to hear claims for unjust enrichment); *Bettis v. Premier Pool & Property Mgmt., LLC*, 2012 WL 4662225, at *4 (Del. Ch. Sept. 26, 2012) (Court of Chancery may decline to hear unjust enrichment claim where plaintiff has adequate remedy at law).